LOUIS KOEHL, PLAINTIFF-RESPONDENT, v. LOUISE BOLLINGER, AS EXECUTRIX OF THE ESTATE OF ERNST G. SCHMIDT, DECEASED, DEFENDANT-APPELLANT.

Submitted October 27, 1933—Decided January 5, 1934.

For the plaintiff-respondent, *William George.*

For the defendant-appellant, *Bauer & Ranker.*

The opinion of the court was delivered by

CASE, J.   Plaintiff sued in the Hudson County Circuit Court for the collection of a promissory note made by Ernst G. Schmidt, now deceased, in the amount of $5,000, dated July 14th, 1928, payable three days thereafter to the order of the plaintiff.   One of the defenses set up in the answer filed by the defendant, executrix of the said Schmidt, was payment; and in support of that defense the executrix at the trial proved the payment by the decedent maker to the plaintiff of the face amount of the note by two checks, one of $2,000 on July 16th, 1928, two days after the note was given and the other of $3,000 on September 13th, 1928.   Each check was drawn to the order of plaintiff, bore his endorsement and his only, and was perforated by a bank stamp showing payment of the check.   Plaintiff admitted these payments but countered with testimony that at the giving of the note sued upon the decedent had in fact given two notes, each in the amount of $5,000, the one sued upon being payable in three days after the date thereof and the other being payable three months after that date, and then when the payment of $2,000 was received, plaintiff credited it upon the three months' note and took a new note of $3,000 for the balance, and that when the $3,000 was paid, plaintiff applied it in payment of the last mentioned note.   At the close of the trial, on motion by the plaintiff, Judge Brown, presiding, directed a verdict in plaintiff's favor for $6,420, that being the face amount of the note plus interest.   The appeal is from the judgment entered thereon.

. The documentary proof was consistent with, and evidential of, payment. There was opposing proof from the lips of plaintiff and of his mother; but the question is whether the trial court was right in determining the factual issue as a matter of law.

The plaintiff was not without self-contradiction under oath. On the witness stand he testified that the consideration for the note sued upon was services rendered by him to the decedent. He was then confronted with his sworn statement in answer to an interrogatory that the consideration for the note was care and attendance rendered by the plaintiff's mother to the decedent and that the mother had assigned her claim to the plaintiff. In that exigency plaintiff testified that the services were rendered both by him and by his mother. The services alleged by plaintiff, who is in the tile business, to have been rendered by him consisted chiefly of alcohol rubs given to the decedent after the latter had bathed at plaintiff's—not the decedent's—home and in taking the decedent occasionally for a little ride in plaintiff's Ford sedan in company with plaintiff's mother. There were other contradictions, as, for instance, the plaintiff's admission on the witness stand that the $5,000 had been paid to him, whereas his interrogatory answer was that it had been paid to his mother. There was testimony also that the plaintiff's mother had rendered the decedent services of no closely detailed description; she helped the decedent with his arm when it was broken many years before, and had read to and talked with him; but it was admitted that the decedent had "helped out" the mother with money at different times—amounts and times not specified. Also, "love and affection" were, in the testimony on plaintiff's behalf, suggested as reasons for the giving of the notes; and the giving of the notes was, according to the mother, pursuant to an earlier remark by the decedent that "he would leave us some money" and that he thought it was "no more than fair that Louis should have something." The plaintiff and his mother were not of kin with the decedent.

Was there in fact a second $5,000 note? And if there was,

were the moneys admittedly paid by the decedent applied in payment of it? Plaintiff and his mother say that there was such a note and that the moneys were so applied, and no one testifies otherwise. But who, for the defense, could give contrary testimony? The alleged maker is dead. It is not intimated that anyone but him, the plaintiff and the latter's mother knew of the transaction. It is quite possible that a man who holds another in love and affection and proposes to "leave" the latter some money, and who, because of intimate services, considers himself under some money debt, should give that other person two promissory notes, each in the amount of $5,000 bearing concurrent date, one payable practically at once and one three months thereafter, and then in two installments within the three months' period pay off the note not yet due and give no attention to the accrued obligation. But is it probable? It is not the usual practice of men to pay an unmatured obligation and leave, unnoticed and unmentioned, an accrued debt owing to the same creditor. And must plaintiff's testimony be accorded unquestioned credence regardless of the probabilities or improbabilities of his story or of its elusive and somewhat contradictory character? We do not enter upon a discussion as to whether or not, assuming there were two notes, the plaintiff had the legal right, in the absence of instructions from the decedent, to apply the payments to one the maturity of which was not yet at hand; our consideration is wholly one of probabilities and inferences to be drawn from proved facts. A decedent's estate in such a situation is quite helpless unless weight, *pro* and *con,* may be given to rational inferences from proved facts. It cannot be said that the executrix, in failing to contradict, categorically, plaintiff's testimony that decedent gave a second note to which the payments were applied, thereby impliedly admitted that such was the fact. In every case where the issue depends upon the determination of facts the existence of which is not admitted, the jury, and not the court, must determine them. *Schmidl* v. *Marconi Wireless Tel. Co.,* 86 *N. J. L.* 183.

A motion for a directed verdict admits, for the purposes of

the motion, the truth of the evidence and of every inference of fact favorable to the other party that legitimately can be drawn therefrom, and where such evidence or inference of fact will support a verdict for such party, the motion should be denied. *Hunke* v. *Hunke,* 103 *N. J. L.* 645; *Weston Co.* v. *Benecke,* 82 *Id.* 445. We think that a jury could, if it would, find that the money was in payment of the note sued upon. We do not suggest that the proofs lead to that finding, but the case was one on which the minds of men might reasonably differ and should have gone to the jury. The direction of verdict in favor of the plaintiff was error. The wisdom of the statutory limitation upon the giving of testimony by a party to an action wherein one of the parties sues or is sued in a representative capacity, unless the representative offers himself as a witness and testifies to any transaction with, or statement by, his testator or intestate (2 *Comp. Stat., p.* 2218, § 4) is illustrated by the development in this case; but the operation of the statute was not invoked at the trial.

The judgment below will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 16.